IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | Criminal No. 03-238 |
| | ) | |
| TERRON SHONTANE TAYLOR, | ) | |
| | ) | |
| Defendant. | ) | |

O R D E R

AND NOW, this 26th day of February, 2021, upon consideration of the Motion for Compassionate Release (Doc. No. 108), filed by Defendant Terron Shontane Taylor in the above captioned matter on August 25, 2020, and in further consideration of the Government's response thereto (Doc No. 111), filed on November 6, 2020, as well as Defendant's reply (Doc. No. 115), filed on December 1, 2020, and his supplement to his motion (Doc. No. 116), filed on February 24, 2021,

IT IS HEREBY ORDERED that said Motion is DENIED.

Defendant was charged in the above matter with conspiracy to distribute and possess with intent to distribute one kilogram or more of heroin, in violation of 21 U.S.C. § 846, and was also charged at Criminal No. 05-148 with conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h). Defendant was further charged in a related heroin-trafficking case in the Eastern District of Pennsylvania at Criminal No. 02-801-20. On May 31, 2005, he entered a guilty plea to the charges at both Criminal No. 03-238 and Criminal No. 05-148 before this Court. On August 25, 2005, the Court sentenced him to 336 months' imprisonment at Criminal No. 03-238, to be served concurrently with the term of imprisonment of 216 months imposed at

1

Criminal No. 05-148, and also to be served concurrently with the remainder of the term of imprisonment imposed at Criminal No. 02-801-20 in the Eastern District of Pennsylvania.  The Court further imposed a term of supervised release of ten years at Criminal No. 03-238, to be served concurrently with the three-year term of supervised release imposed at Criminal No. 05-148.

On September 6, 2005, Defendant's attorney filed a notice of appeal at both Criminal No. 03-238 and Criminal No. 05-148.  On July 12, 2006, the Court of Appeals for the Third Circuit issued final judgments at each criminal number, affirming the judgment and order of this Court.  Defendant's attorney subsequently filed a petition for writ of certiorari at both criminal numbers, and, on October 30, 2006, the petition was denied as to both cases.   On October 13, 2014, Defendant filed motions for collateral relief at both criminal numbers pursuant to 28 U.S.C. § 2255, which the Court denied on June 25, 2015.

Defendant now seeks "compassionate release," pursuant to 18 U.S.C. § 3582(c)(1)(A), on the basis that he contracted the COVID-19 virus while incarcerated at FCI-Low Yazoo City, Mississippi, which he claims places him at higher risk of severe illness and complications in the event that he contracts COVID-19 a second time.  In his supplement to his motion, he also references the risks presented by his race and obesity.  Defendant argues that his unique vulnerability to the COVID-19 pandemic constitutes an extraordinary and compelling circumstance warranting his release.  For the reasons stated below, the Court disagrees and will deny the motion.

A district court's authority to modify a sentence in a criminal case that has become final is very limited.  *See Dillon v. United States*, 560 U.S. 817, 819 (2010); *United States v. Ponton*, 407 Fed. App'x 622, 624 (3d Cir. 2011).  District courts do have authority, however, to reduce a

final sentence under 18 U.S.C. § 3582(c).  Section 3582(c)(1)(A), as amended by the First Step

Act, Pub. L. 115-391, 132 Stat. 5194, permits an incarcerated person to petition the court for

compassionate release.  The statute provides in pertinent part:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion
> of the defendant after the defendant has fully exhausted all administrative rights to
> appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf
> or the lapse of 30 days from the receipt of such a request by the warden of the
> defendant's facility, whichever is earlier, may reduce the term of imprisonment (and
> may impose a term of probation or supervised release with or without conditions
> that does not exceed the unserved portion of the original term of imprisonment),
> after considering the factors set forth in section 3553(a) to the extent that they are
> applicable, if it finds that--
>
> **(i)** extraordinary and compelling reasons warrant such a reduction…and that such
> a reduction is consistent with applicable policy statements issued by the Sentencing
> Commission.

18 U.S.C. § 3582(c)(1)(A)(i).  Defendant submitted a request to the warden at FCI-Low Yazoo

City on July 1, 2020.  (Doc. No. 108-2).  Because the warden received Defendant's request more

than 30 days ago, the Court can consider the pending motion for compassionate release.  *See*

*United States v. Harris*, 973 F.3d 170, 171 (3d Cir. 2020).  The Government does not dispute

that Defendant has met the procedural requirements of Section 3582(c)(1)(A).

Having determined that Defendant met the procedural requirements, the Court must next

decide whether he has established an extraordinary and compelling reason warranting a reduction

in his sentence and whether a reduction is consistent with applicable Sentencing Commission

policy statements.  Section 3582 itself does not define the term "extraordinary and compelling

reasons."  Rather, Congress left it to the United States Sentencing Commission to define the

term.  *See* 28 U.S.C. § 994(t) (stating that the Sentencing Commission "shall describe what

should be considered extraordinary and compelling reasons for sentence reduction, including the

criteria to be applied and a list of specific examples").  Pursuant to this authority, the Sentencing

Commission defined "extraordinary and compelling" in the Application Notes to U.S.S.G. § 1B1.13.  There, the Commission explained that extraordinary and compelling reasons exist where: "The defendant is suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."  *Id.* § 1B1.13 cmt. n.1(A)(ii).  Extraordinary and compelling reasons also include terminal illness, advanced age, family circumstances, and "[o]ther [r]easons."  *Id.* § 1B1.13 cmt. n.1(A)-(D).  The "[o]ther [r]easons" provision of Section 1B1.13 cmt. n.1(D) is described as "an extraordinary and compelling reason other than, or in combination with, the reasons," enumerated in subsections (A) through (C).  Consistent with 28 U.S.C. § 994(t), the Commission noted that rehabilitation "is not, by itself, an extraordinary and compelling reason," warranting release.  *Id.* § 1B1.13 cmt. n.3.

The Commission has not updated this policy statement since the enactment of the First Step Act, and, since the Act was enacted, numerous courts have considered whether Section 1B1.13 limits courts' discretion to find extraordinary and compelling reasons for a reduction in sentence.  The consensus view is that, while Section 1B1.13 may continue to provide helpful guidance,  it "does not constrain a court's independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3852(c)(1)(A)."  *United States v. Somerville*, 463 F. Supp. 3d 585, 594 (W.D. Pa. 2020) (quoting *United States v. Rodriguez*, 451 F. Supp. 3d 392, 397 (E.D. Pa. 2020)); *United States v. Davidson*, No. 2:16-CR-00139-2, 2020 WL 4877255, at *18 (W.D. Pa. Aug. 20, 2020); *United States v. Jones*, No. 94-CR-20079-EJD-1, 2020 WL 5359636, at *5 (N.D. Cal. Aug. 27, 2020).  Even assuming, without deciding, that the Court is not constrained by Section 1B.13, it finds that under any definition of

the terms, Defendant has not demonstrated extraordinary and compelling reasons for compassionate release.

Defendant bases his claim on compassionate release primarily on the fact that he has, in fact, contracted COVID-19 while incarcerated at FCI-Low Yazoo City and that he has serious concern of lasting damage to his heart and immune system, rendering him at significant risk for serious complications should he again contract COVID-19.  In his supplemental reply, he also asserts that his race and obesity increase his risk of re-acquiring the virus.  At the outset, the Court notes that the Third Circuit Court of Appeals has held that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."  *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).  *See also United States v. Roeder*, 807 Fed. Appx. 157, 161 n.16 (3d Cir. 2020).  Moreover:

> Over the past few months, district courts in both the pretrial and civil detention contexts likewise have opined that a generalized fear of the virus reaching a given institution is not a proper basis for release. *See Ndir v. Doll*, No. 1:20-CV-705, —— F. Supp. 3d – ——, 2020 WL 2306761, at *5 (M.D. Pa. May 8, 2020) (Conner, C.J.) (collecting cases in civil immigration detainee context); *D.M. v. Barr*, No. 20-4031, 2020 WL 1969893, at *5 (D.N.J. Apr. 24, 2020) (same); *United States v. Anderson*, No. 1:19-CR-239, 2020 WL 1953612, at *4, 5 (M.D. Pa. Apr. 23, 2020) (same in pretrial detention context). In other words, something more than a generalized concern regarding COVID-19 is required.

*United States v. Stallings*, No. 1:12-CR-37, 2020 WL 3619071, at *3 (M.D. Pa. July 2, 2020).

*See also Somerville*, 463 F. Supp. 3d at 596 (explaining courts have found that "generalized or speculative fear about the risk of infection" does not warrant compassionate release); *Davidson*, 2020 WL 4877255 at *19; *United States v. Andrews*, 480 F. Supp. 3d 669, 686 (E.D. Pa. 2020).

However, while the mere existence of the COVID-19 virus may not warrant compassionate release, courts have, in determining whether to grant relief under Section 3582(c)(1)(A),  considered whether the defendant's medical conditions, as exacerbated by the ongoing COVID-19 pandemic, rise to an "extraordinary and compelling" level, such that release could be warranted.  *See United States v. Iezzi*, No. 2:17-CR-00157, 2020 WL 4726582, at *8 (W.D. Pa. Aug. 14, 2020); *Andrews*, 480 F. Supp. 3d at 686; *United States v. Brinson*, CR 15-87, 2020 WL 4736258, at **3-4 (W.D. Pa. Aug. 14, 2020).  Successful movants for compassionate release whose requests are based, in part, on the ongoing pandemic, have demonstrated a unique medical or age-related vulnerability to severe illness from COVID-19, and "an actual, non-speculative risk of exposure to COVID-19 in the facility where the prisoner is held."  *Somerville*, 463 F. Supp. 3d at 597.

As noted, Defendant relies primarily on the fact that he had previously been diagnosed with COVID-19 in April of 2020.  However, there is no question that he recovered from the virus.  Indeed, aside from a short-lived fever, Defendant's medical records do not indicate any significant symptoms that Defendant suffered at the time he was diagnosed, much less subsequent to his recovery.  While Defendant speculates that COVID-19 may have impacted his heart and/or immune system, there is no medical evidence of any such impact.  *See United States v. Moses*, No. 4:16-CR-00019-14, 2020 WL 4607249, at *2 (M.D. Pa. Aug. 11, 2020) (holding that extraordinary and compelling reasons warranting compassionate release were not established where, although Defendant "was previously diagnosed with COVID-19, the record demonstrates that he has fully recovered from his viral infection and now suffers no health consequences as a result of that infection"); *United States v. Hilts*, No. 11-CR-133, 2020 WL 4450373, at *2 (W.D. Pa. Aug. 3, 2020) (finding no extraordinary and compelling reasons in part because the

defendant had previously tested positive for COVID-19 and recovered, stating that "[t]here is no indication that he suffered from complications of any kind"); *United States v. Korbe*, No. 2:09-CR-05-NR-1, 2020 WL 6384368, at \*3 (W.D. Pa. Oct. 30, 2020) (holding that a defendant's previous COVID-19 infection and a generalized risk of exposure to COVID-19 was insufficient to show extraordinary and compelling reasons); *United States v. Wiltshire*, No. CR 11-310, 2020 WL 7263184, at \*6 (E.D. Pa. Dec. 9, 2020) (finding that the risk of reinfection after a prior positive test for COVID-19 is a not a basis for compassionate release, as "[p]resently, there is no scientific consensus on the risk of reinfection").

By no means does the fact that Defendant previously tested positive for COVID-19 negatively impact his claim of extraordinary and compelling reasons. *See Davidson*, 2020 WL 4877255 at \*20 (explaining that "there is currently no medical consensus as to whether someone who has tested positive for the COVID-19 virus . . . will be protected from reinfection" (citing *Interim Clinical Guidance for Management of Patients with Confirmed Coronavirus Disease (COVID-19)*, Ctrs. for Disease Control & Prevention (last updated Feb. 16, 2021), https://bit.ly/3hPEnyW; Preetika Rana, *Can You Catch Covid-19 Twice?*, Wall Street Journal (July 8, 2020), https://on.wsj.com/2Dd15lx)). The problem here is that Defendant can point to no other conditions that would so impact his risk of re-contracting COVID-19 or suffering greater harm from a second viral infection as to constitute extraordinary and compelling reasons. He merely speculates that he may suffer from such risks, and unfortunately, the record contains little or no evidence supporting this speculation.

As noted, Defendant has raised his obesity as a possible increased risk factor. According to the Centers for Disease Control and Prevention, people diagnosed with obesity are indeed at increased risk of severe illness from COVID-19 because of their medical condition. *See People*

*with Certain Medical Conditions*, Ctrs. for Disease Control and Prevention,

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Feb. 22, 2021).  However, it is also clear that "[t]he more underlying medical conditions someone has, the greater their risk is for severe illness from COVID-19."  *Id.*  Although the records do credibly show that Defendant has a Body Mass Index indicative of obesity, he cites to no related symptoms other than the fact of his weight, such as breathing issues or hypertension.  Courts have generally found that mere obesity, even in combination with a prior COVID-19 diagnosis, does not constitute an extraordinary and compelling reason justifying compassionate release.  *See United States v. Bell*, No. 15-CR-603 (WJM), 2021 WL 303009 (D.N.J. Jan. 29, 2021); *United States v. Johnson*, No. CR 2:08-374, 2021 WL 409830 (W.D. Pa. Feb. 5, 2021).[1]  Defendant's mention of his obesity here was largely "after-the-fact," and he attributes no specific health-related problems to his weight.  He himself acknowledges that he is not currently being prescribed medication, nor does he require durable medical equipment or living assistance (Doc. No. 108 at 5), and his medical records corroborate this general absence of current ongoing medical care.

Defendant also expresses concerns related to COVID-19 prevention and containment at FCI-Low Yazoo City.  The Court notes however that, while there certainly have been issues in the past with the virus at FCI-Low Yazoo City, currently there are only two active cases among inmates, and five among staff, being reported at the facility.  *See* www.bop.gov/coronavirus (last visited February 26, 2021).  Regardless, this Court agrees with those that have found that merely

---

[1]      This Court agrees with those courts that have found that a defendant's race alone does not warrant compassionate release, as it is unclear whether race is an independent risk factor for contracting COVID-19 or whether adverse outcomes correlating with race are based on other factors.  *See Bell*, 2021 WL 303009 at *3; *Johnson*, 2021 WL 409830 at *8.  In any event, the Court has considered all the other factors raised by Defendant in making its determination.

being confined at an institution that has experienced the virus does not itself warrant release. *See United States v. Thornton*, No. CR 2:18-167-1, 2020 WL 4368155, at *4 (W.D. Pa. July 29, 2020) ("[T]he existence of the virus in a prison . . . is not sufficient to establish extraordinary and compelling circumstances without some proof that the defendant is at more severe risk for infection than his fellow inmates.") (quoting *United States v. Rutley*, No. 17-CR-56-PP, 2020 WL 4040729, at *7 (E.D. Wis. July 17, 2020)). *See also United States v. Culbreth*, No. 1:14-CR-235, 2020 WL 4504393, at **4-5 (M.D. Pa. Aug. 5, 2020); *Brinson*, 2020 WL 4736258 at *3. For all of the reasons herein, the Court finds that the factors proposed by Defendant, even considered in the aggregate, are not extraordinary and compelling.[2]

As the Court has explained, it has only very limited authority to modify a final sentence in a criminal case. While the First Step Act's amendment of Section 3582 provides one such source of authorization for the Court to amend Defendant's sentence, it does not warrant such relief here. Accordingly, Defendant's motion is denied.


s/Alan N. Bloch
United States District Judge


ecf: Counsel of record

cc: Terron Taylor, Reg. No. 54918-019
    FCI Yazoo City Low
    P.O. Box 5000
    Yazoo City, MS 39194

---

[2]     The Court does laud Defendant for his good behavior while incarcerated. Although the Court has considered his rehabilitative efforts in the aggregate, it notes that this factor does not tip the scale in favor of compassionate release, particularly in light of the very serious criminal conduct in this case and Defendant's particularly poor criminal record.