IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| vs. | ) Criminal Action No. 03-238 |
| TERRON SHONTANE TAYLOR, | ) |
| Defendant. | ) |

<u>ORDER</u>

AND NOW, this 3rd day of May 2022, upon consideration of the Motion to Reduce Sentence ("Compassionate Release") pursuant to 18 U.S.C. § 3582(c)(1)(A) (Doc. No. 121), filed by Terron Shontane Taylor ("Defendant") in the above-captioned matter on October 29, 2021; as well as Defendant's Supplement (Doc. No. 126); and Reply (Doc. No. 131),[1]

IT IS HEREBY ORDERED that the motion is DENIED.

This is Defendant's second compassionate release motion, the first (Doc. No. 108) having been denied by the Court on February 26, 2021. (Doc. No. 117); *United States v. Taylor*, No. CR 03-238, 2021 WL 767613 (W.D. Pa. Feb. 26, 2021). Because the Court summarized the history of Defendant's case in the Order denying his first motion for compassionate release, only a brief review of essential facts is necessary here. Defendant was sentenced to a 336-months

---

[1] The Court initially set a schedule calling for the Government's response to Defendant's Motion by December 2, 2021. (Doc. No. 122). Subsequently, the Court granted the Government's first motion for an extension of time to respond (Doc. Nos. 127, 128) and its second such motion (Doc. No. 129, 130). Granting the Government's second motion, the Court set January 26, 2022, as the new deadline for the Government's response and February 9, 2022, for Defendant's reply. (Doc. No. 130). On February 9, 2022, Defendant filed his reply and the Government filed its third motion for an extension of time to file a response. (Doc. Nos. 131, 132). Owing to the time-sensitive nature of Defendant's Motion, the Court denied the Government's third extension motion. (Doc. No. 133). Notwithstanding the absence of the Government's response, it is Defendant's burden to demonstrate his circumstances warrant relief pursuant to Section 3582(c)(1)(A). *United States v. Bednarski*, No. 1:19-CRIM-20(2), 2022 WL 80080, at *2 (W.D. Pa. Jan. 7, 2022) (citations omitted).

term of imprisonment at Criminal No. 03-238 to run concurrently with a 216-months term imposed at Criminal No 05-148 and the remainder of a term of imprisonment that had been imposed by the United States District Court for the Eastern District of Pennsylvania at 02-801-20.  (Doc. No. 76); *Taylor*, 2021 WL 767613, at *1.  With good-time credit, his projected release date is May 25, 2028.  (Doc. No. 121-1, pg. 2).

In the instant motion, Defendant asks the Court to reduce his sentence to time served or another term the Court would find reasonable with such conditions as the Court would deem necessary.  (Doc. No. 121, pg. 1).  He argues a reduction in sentence is justified under the "compassionate release" provision of 18 U.S.C. § 3582(c)(1)(A).  *United States v. Handerhan*, 789 Fed. Appx. 924, 925 (3d Cir. 2019) (per curiam) (using the oft-employed shorthand for Section 3582(c)(1)(A)(i)).  Pursuant to Section 3582(c)(1)(A), courts "may reduce the term of imprisonment" when, *inter alia*, there are "extraordinary and compelling reasons" that "warrant such a reduction."[2]  Defendant argues that there are three reasons warranting a reduction of his sentence: (1) he is serving an excessive term of imprisonment because, at the time of his sentencing, the Court underestimated the extent of its discretion to impose a more lenient sentence; (2) his risk of being infected with COVID-19 and becoming seriously ill is heightened by his poor physical health, *i.e.*, his obesity; and (3) he has demonstrated extraordinary rehabilitation during his imprisonment.  (Doc. No. 121, pg. 8).[3]  The Court will deny Defendant's motion for the reasons explained herein.

---

[2]    Courts must also "consider[] the factors set forth in section 3553(a) to the extent that they are applicable" and find that "a reduction is consistent with applicable policy statements issued by the Sentencing Commission" before granting a defendant's compassionate release motion.  *Id.*

[3]    Two of Defendant's three proposed reasons for a reduced sentence were argued in his first motion for compassionate release.  *Taylor*, 2021 WL 767613, at *3—5 (explaining the Court's consideration of Defendant's alleged health risks and rehabilitation).  Though the Court

The Court's "authority to modify a sentence in a criminal case that has become final is very limited." *Taylor*, 2021 WL 767613, at *1 (citing *Dillon v. United States*, 560 U.S. 817, 819 (2010); *United States v. Ponton*, 407 Fed. Appx. 622, 624 (3d Cir. 2011)).  Section 3582(c)(1)(A)(i) authorizes reduction of a term of imprisonment if "extraordinary and compelling reasons warrant such a reduction."  The mechanism for requesting a reduced sentence thereunder was, until recently, a Bureau of Prisons ("BOP") initiated motion.  But in 2018 "prisoner-initiated motions for compassionate release" were authorized by the First Step Act.  *United States v. Andrews*, 12 F.4th 255, 257 (3d Cir. 2021), *cert. denied*, No. 21-1208, 2022 WL 994375 (U.S. Apr. 4, 2022) (citing First Step Act § 603(b)).  Accordingly, a prisoner in BOP custody may move for a reduced sentence on his own behalf once he has filed "an administrative request for compassionate release with the warden of his facility" followed by his full exhaustion of administrative remedies or the lapse of thirty days.  *Bednarski*, 2022 WL 80080, at *2 (citing 18 U.S.C. § 3582(c)).

Congress declined to define what constitutes "extraordinary and compelling reasons" at Section 3582(c)(1)(A)(i).  Instead, it delegated defining that term to the United States Sentencing Commission ("Commission").  28 U.S.C. § 994(t) ("The Commission . . . shall describe what should be considered extraordinary and compelling reasons for sentence reduction[.]").  The Commission had provided an appropriate definition in the United States Sentencing Guidelines ("Guidelines") at U.S.S.G. § 1B1.13 cmt. n.1 (A)—(D).[4]  However, many courts—including this

---

is reluctant to permit a "rematch" regarding those reasons, *Dici v. Com. of Pa.*, 91 F.3d 542, 547 (3d Cir. 1996) (citation omitted), it will consider all the reasons Defendant proposes here to determine whether, in the aggregate, there is an extraordinary and compelling reason that warrants a reduced term of imprisonment in this matter.

[4]   Pursuant to the Commission's definition, extraordinary and compelling reasons included a terminal illness, advanced age with age-related health problems, "death . . . of the caregiver of

Court and the United States Court of Appeals for the Third Circuit—have determined that the extraordinary-and-compelling definition at Section 1B1.13 was made advisory upon the First Step Act's enactment. *Andrews*, 12 F.4th at 259.[5]

Accordingly, the Court is not bound by the Commission's former description of extraordinary and compelling reasons. However, the Court's discretion is not entirely unfettered. The Court is statutorily prohibited from citing rehabilitation alone as the reason for reducing a term of imprisonment. 28 U.S.C. § 994(t) ("Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."); *Taylor*, 2021 WL 767613, at *2. Further, the text of the statute demands that any proposed reason for a reduced term must be found to be "extraordinary" and "compelling." 18 U.S.C. § 3582(c)(1)(A)(i). "'[E]xtraordinary' is commonly understood to mean 'going beyond what is usual, regular, or customary,'" and "'compelling' means 'forceful,' 'demanding attention,' or 'convincing.'" *United States v. Somerville*, 463 F. Supp. 3d 585, 595 (W.D. Pa. 2020) (citations omitted). Therefore, "at a minimum, § 3582(c)(1)(A)(i) requires" that a defendant's reason for release be "both **unusual** (*i.e.*, unique to the inmate, and beyond the ordinary hardship of prison) and **significant** (*i.e.*, serious enough to make release appropriate)." *Id.* at 595—96.

Before assessing Defendant's proposed extraordinary and compelling reasons for release, the Court finds that Defendant's motion is properly before it. Defendant asked the warden of his

---

the defendant's minor child or minor children," and any additional reason the Director of the BOP might find to be appropriate. *Id.*

[5] Ruling on Defendant's first compassionate release motion, the Court explained that the Commission's definition—binding or not—provides "helpful guidance." *Taylor*, 2021 WL 767613, at *2. In *Andrews* the Third Circuit likewise held that the outdated policy statement "still sheds light on the meaning of extraordinary and compelling reasons." 12 F.4th at 260.

4

BOP facility to move the Court for a reduced sentence on his behalf on February 10, 2021 (Doc. No. 121-2) and his attorneys pursued that request with the warden on or around August 27, 2021 (Doc. No. 121-3).  Thereafter, Defendant waited more than thirty days before moving the Court for compassionate release on his own behalf.  (Doc. No. 121 (Oct. 29, 2021)).  Accordingly, the thirty-day lapse provision of Section 3582(c)(1)(A) is satisfied.

Turning to Defendant's three proposed reasons for compassionate release, the Court first addresses his argument that his excessive sentence warrants a reduction of his term of imprisonment.  (Doc. No. 121, pgs. 9—12).  Defendant argues that the Court imposed an excessively long term of imprisonment (336 months) because his sentencing took place after the United States Supreme Court decided the Guidelines were not mandatory in *United States v. Booker*, 543 U.S. 220 (2005),[6] but before the Supreme Court fleshed out the full extent of sentencing courts' discretion in cases like *Gall v. United States*, 552 U.S. 38 (2007), and *Kimbrough v. United States*, 552 U.S. 85 (2007).  At Defendant's sentencing on August 25, 2005, the Court acknowledged that the Guidelines were only advisory.  (Doc. No. 86, pgs. 21—22).  When Defendant's attorney advocated for a more lenient term of imprisonment than the shortest sentenced recommended by the Guidelines, the Court indicated it would require a "good reason" to impose such a sentence.  (*Id.*).  The Court further indicated that the "good reason" had to be something more than merely believing the sentence recommended by the Guidelines was "too sever[e]."  (*Id.* at pg. 26).

Defendant argues that this sentencing colloquy reflets the Court's narrow view of the freedom it gained from the Supreme Court's decision in *Booker*.  He argues that the Court might

---

[6]   In *Booker*, the Supreme Court held that the Sentencing Guidelines—which had previously bound sentencing courts—were "effectively advisory." 543 U.S. at 245.

5

have considered excessive severity as a legitimate reason to impose a shorter term of imprisonment had it been guided by *Gall* wherein the Supreme Court rejected an "'extraordinary' circumstances" requirement for imposing a sentence outside the Guidelines range, 552 U.S. at 47, and *Kimbrough* wherein the Supreme Court explained that sentencing judges could impose a more lenient sentence than the sentence suggested by the Guidelines if they determined the latter was "greater than necessary" to accomplish the purposes of sentencing. 552 U.S. at 91.[7] While this argument is not meritless, it presents itself more like a challenge to the *correctness* of Defendant's sentence than it does a compassionate release motion. It is unlike the reasons previously described by the Commission, *e.g.*, terminal illness or being the only person available to care for a family member. U.S.S.G. § 1B1.13 cmt. n.1(A)—(C). Insofar as the Commission's definition, though no longer binding on the Court, continues to guide its discretion, *Andrews*, 12 F.4th at 260, the dissimilarity between Defendant's first proposed reason for release and the circumstances articulated in the previously controlling policy statement gives the Court pause.

Not only that, but this Court has cautioned that an excessively permissive approach to compassionate release motions would threaten to undermine the statutory limit on the number of times that a federal prisoner may challenge his sentence pursuant to 28 U.S.C. § 2255. *United States v. Reed*, No. CR 06-193, 2021 WL 914203, at *4 (W.D. Pa. Mar. 10, 2021), *appeal dismissed*, No. 21-1720, 2021 WL 4808011 (3d Cir. July 21, 2021), *and reconsideration denied*, No. CR 06-193, 2022 WL 1120046 (W.D. Pa. Apr. 14, 2022). If the Court found Defendant's first proposed extraordinary and compelling reason justified his release pursuant to Section

---

[7] In *Kimbrough* the Supreme Court found no abuse of discretion in the sentencing court's determination that the crack-to-powder cocaine ratio led to a sentence that was more severe than necessary to accomplish sentencing goals in that matter. 552 U.S. at 111.

3582(c)(1)(A)(i), it would effectively be creating a "workaround" of the "limitations imposed by § 2255 jurisprudence," *i.e.*, "writing them off the books in this circumstance with no limiting principle in doing so." *United States v. Brown*, No. 2:12-CR-00224-1, 2020 WL 4345077, at *5 n.3 (W.D. Pa. July 29, 2020).[8]  Further, the Court has no reason to believe that Defendant, having been sentenced within the range that the Guidelines prescribed for his offense, is in an unusual circumstance as the compassionate release provision requires. *Somerville*, 463 F. Supp. 3d at 595—96.  Regardless of how just it might be for the Court to substitute a shorter sentence for the one it imposed upon Defendant in 2005, the Court will not exceed "limits of controlling law" to that end. *Brown*, 2020 WL 4345077, at *5 n.3.  For these reasons, the Court finds Defendant's first proposed reason for a reduced sentence is not extraordinary and compelling.

The Court is similarly unpersuaded that the risk posed by COVID-19 is a reason warranting a reduction of Defendant's term of imprisonment.  "[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).  The general threat posed to all persons by COVID-19 becomes sufficiently threatening and imminent to a prisoner to warrant a reduction in sentence when he demonstrates that: "(1) he

---

[8]     The Court sees its concern in this regard reflected in the Third Circuit's decision in *Andrews*.  In *Andrews*, the Third Circuit decided that the district court had "not err[ed] when it concluded that the duration of [the defendant's] sentence and the nonretroactive changes to mandatory minimums could not be extraordinary and compelling reasons warranting sentence reduction." 12 F.4th at 261.  The Court explained in that case that "considering the length of a statutorily mandated sentence as a reason for modifying a sentence would infringe on Congress's authority to set penalties." *Id.*  The Court further explained that it would be odd to "construe Congress's nonretroactivity directive as simultaneously creating an extraordinary and compelling reason for early release." *Id.*  If anything, a nonretroactive sentencing reduction would be relevant not to the courts' consideration of extraordinary and compelling reasons but to the secondary inquiry of whether a defendant who had demonstrated such reasons could also prove that reducing his sentence was consistent with the factors in Section 3553(a). *Id.* at 262.

suffers from a sufficiently serious medical condition, or advanced age, that places him at a uniquely high risk of grave illness or death if infected by COVID-19 (extraordinary); and (2) there exists an actual, non-speculative risk of exposure to COVID-19 at [his BOP facility] (compelling)." *United States v. Craighead*, No. CR 2:17-143, 2021 WL 211498, at *5 (W.D. Pa. Jan. 21, 2021), *reconsideration denied*, No. CR 2:17-143, 2021 WL 396744 (W.D. Pa. Feb. 4, 2021) (citing *Somerville*, 463 F. Supp. 3d at 597).

The risk of serious illness caused by COVID-19 is not extraordinary and compelling in this matter because Defendant has not proven his "uniquely high risk of grave illness or death," nor his "actual, non-speculative risk of exposure to COVID-19." *Id.* Defendant tested positive for COVID-19 in April 2020, but there is no indication he experienced significant symptoms. Being overweight or obese can increase the likelihood of becoming "very sick from COVID-19." *People with Certain Medical Conditions*, CENTERS FOR DISEASE CONTROL AND PREVENTION (Feb. 25, 2022), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. And Defendant's medical records show that his body mass index ("BMI") is in range for obesity. (Doc. No. 121-24). However, obesity alone is not usually found to put prisoners at such unique risk of becoming seriously ill from COVID-19 that it justifies a reduced sentence. *United States v. Smith*, No. CR 16-137, 2021 WL 1163858, at *1 (W.D. Pa. Mar. 26, 2021), *reconsideration denied*, No. CR 16-137, 2021 WL 2661841 (W.D. Pa. June 29, 2021) ("[C]ourts have been reluctant to grant relief in this context based on obesity alone[.]").[9]

---

[9] Other than Defendant's obesity, the Court only notes from his medical records that he appears to have received at least two doses of the Pfizer-BioNTech vaccine. (Doc. No. 121-24). There is no evidence of his having received a booster. Though vaccination does not eliminate the risk posed by COVID-19, many courts have found that vaccination significantly mitigates that risk. *See e.g.*, *United States v. Jones*, No. 1:07-CR-00208-01, 2021 WL 2334285, at *3 (M.D. Pa. June 8, 2021); *United States v. Scalea*, No. 21-2631, 2022 WL 795425, at *1 (3d Cir. Mar. 15, 2022).

Moreover, there are currently no inmates or staff who have tested positive for COVID-19 at Defendant's facility, FCI Yazoo City Low. *COVID-19 Coronavirus*, FEDERAL BUREAU OF PRISONS (April 25, 2022), https://www.bop.gov/coronavirus/.[10] Therefore, Defendant's present risk of exposure to COVID-19 is quite speculative. Accordingly, the Court finds that the risk that Defendant would become seriously ill due to exposure to COVID-19 is neither extraordinary nor compelling.

Finally, the Court addresses Defendant's remaining proposed reason for reducing his sentence: his rehabilitation during the nearly twenty years of his term of imprisonment that he has already served. Defendant argues that he has "made the most of [his] time by enrolling in a wide array of BOP programs, working for UNICOR, staying out of trouble, and, most importantly, learning how to serve others." (Doc. No. 121, pg. 13). He compares his rehabilitation to that of the defendant in *United States v. Northcutt*, a case wherein this Court determined a reduced term of imprisonment was appropriate due to the defendant's personal risk of serious illness from COVID-19 combined with his commendable rehabilitation. 2021 WL 615207, at *3—4 (W.D. Pa. Feb. 17, 2021).

To Defendant's credit, the evidence he has submitted to the Court to demonstrate his rehabilitation is impressive. By the time he finishes his term of imprisonment, Defendant is projected to earn over 1,500 days of good credit time—he has earned over 900 days already. (ECF 121-1, pg. 5). There is only one disciplinary incident in his BOP record for "refusing to leave supervisor's work area when ordered so in UNICOR" from April 2015. (ECF 121-10, pg.

---

[10]     Among the BOP's COVID-19 operational levels, FCI Yazoo City Low is currently operating at a Level 1, https://www.bop.gov/coronavirus/, which permits, *inter alia*, normal operations of the prison's programs, services, recreation, visitation (with face masks), and work detail. *COVID-19 Modified Operations Plan & Matrix*, FEDERAL BUREAU OF PRISONS (last visited May 3, 2022), https://www.bop.gov/coronavirus/covid19_modified_operations_guide.jsp.

2). He has earned numerous certificates for course completion, including Suicide Watch Companion Training; Internal Auditor Training Course; Computer Technologies; Finances; Drywall Marketable Program; Exploratory Drywall Installation; Marketable Drywall Installation and Finishing (100 hours); Marketable Drywall II – Installation and Finishing; and Vocational Trades Small Appliance Exploratory Course (100 hours). (Doc. No. 121-7, pgs. 6—8, 13—16, 26). He has also submitted for the Court's consideration his diploma from the Stratford Career Institute in plumbing with highest honors with a transcript that reflects an overall grade of 94%. (Doc. No. 121-8). The record is also brimming with testimonies to the laudable character of the person he has become. In the letters submitted to the Court, he is described as: hard working, diligent, a leader, a devoted husband/father/grandfather, a mentor, "an incredible spiritual father," a peacemaker, a tutor, a "gentle and compassionate spirit," and "the type of guy who would give you his last food item out of his locker or his last stamp so you could send your letter home." (Doc. Nos. 121-11, 121-12, 121-13, 121-14, 121-15, 121-17, 121-18, and 121-19).

If there were another reason that would warrant reducing his sentence, Defendant's rehabilitation would weigh strongly in favor of that result. However, as the Court explained in the Order denying Defendant's first compassionate release motion, rehabilitation is the one reason that cannot justify reducing a defendant's sentence on its own. *Taylor*, 2021 WL 767613, at *2 (citing 28 U.S.C. § 994(t)). And, unlike the defendant in *Northcutt*, Defendant is not facing "a concrete risk of exposure to COVID-19" or any other extraordinary and compelling circumstance. 2021 WL 615207, at *3. Accordingly, if the Court were to reduce Defendant's term of imprisonment based on his rehabilitation, it would exceed its authority under 18 U.S.C.

§ 3582(c)(1)(A) as limited by 28 U.S.C. § 994(t).  For all these reasons, Defendant's motion for compassionate release is denied.[11]

                                                                  s/ Alan N. Bloch
                                                            United States District Judge

ecf:    Counsel of record

---

[11] The Court, having determined that there are no "extraordinary and compelling reasons" that warrant reducing Defendant's term of imprisonment, need not determine whether its consideration of the Section 3553(a) factors would have permitted such a reduction.  18 U.S.C. § 3582(c)(1)(A).